[Civ. No. 1207. Fifth Dist. Nov. 2, 1970.]

MURIEL M. SAMMER, Cross-complainant and Respondent, v.
FRANK BALL et al., Cross-defendants and Appellants.

## COUNSEL

Carlson, Collins & Bold and Frederick Bold, Jr., for Cross-defendants and Appellants.

Cardozo, Trimbur & Nickerson and Paul L. Martelli for Cross-complainant and Respondent.

## OPINION

GARGANO, Acting P. J.—Appellants Frank and June Ball appeal from a judgment entered on a cross-complaint. The facts as gleaned from the settled statement and the depositions are these:

In 1961 appellants acquired certain commercial property in Ceres, California, known as the Lazy Wheels Trailer Park. Appellants decided to increase the number of trailer spaces and engaged Paul Holmdhal to prepare the drawing which was needed to acquire state and city approval. The drawing Holmdhal prepared designated 6-inch sewer lines to accommodate the new spaces and contained a note stating, "¾″ water line with ¾″ riser and ½″ branch takeoff. . . ." Appellants gave one copy of the drawing to the state inspector and one to Mr. Carlin, their plumber, to take to the building official of the City of Ceres in order to secure a building permit. They kept one copy at the trailer park.

At the building office, Carlin was told that 4-inch sewer lines were sufficient, and a permit was issued accordingly; the unrevised drawing was placed in the building officer's file..

In January 1962, appellants sold the Lazy Wheels Trailer Park to respondent Muriel M. Sammer; they left their copy of the drawing at the trailer park, and Mrs. Sammer used it to make notes about trailer spaces. In March 1963, Mrs. Sammer sold the property to Ralph, Ozzie and Dominik Caloiaro. Prior to the sale, she told Ralph Caloiaro that the trailer park was serviced by 6-inch sewer lines and a 1-inch water main. When the Caloiaros discovered that the sewer lines were 4 inches and the water main

was ½ inch, they brought this action against Mrs. Sammer for damages. Respondent in turn filed a cross-complaint against appellants, alleging that appellants falsely and fraudulently misrepresented the sizes of the sewer lines and the water main to her.

At the conclusion of a one-day court trial, the trial judge filed a decision ordering judgment in favor of the plaintiffs Caloiaro, on their complaint. The court ordered judgment in favor of the cross-defendants on the cross-complaint, stating that the cross-complaint was not for indemnification but was "an outright declaration of the fact that the Sammers had been damaged by reason of misrepresentation of the Balls, and there is nothing in the cross-complaint that gives this court any power whatsoever to grant a judgment on behalf of the Sammers as against the Balls." Mrs. Sammer, then, filed a memorandum pointing out that whether she was entitled to indemnification against appellants was made an issue in the pretrial order; the pretrial order was adopted before appellants appeared in the action, but their counsel stipulated that the matter could proceed to trial without further pretrial conference proceedings. Upon receiving the memorandum, the court reopened the trial on the issue of damages. Afterward, the court entered judgment in favor of respondent on the cross-complaint on the theory of implied indemnity.

■ Indemnity is defined as the obligation resting on one person to make good any loss or damage another has incurred. ■■ While generally it rests on contract, it may also arise by implication as the result of equitable considerations (*City & County of S.F.* v. *Ho Sing,* 51 Cal.2d 127 [330 P.2d 802]; *Peters* v. *City & County of San Francisco,* 41 Cal.2d 419 [260 P.2d 55]), and "the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case." (*Herrero* v. *Atkinson,* 227 Cal.App.2d 69, 74 [38 Cal.Rptr. 490, 8 A.L.R.3d 629].) ■ Furthermore, the party seeking indemnification must prove that he did not actively or affirmatively participate in the wrong which caused the injury beyond the mere failure to perform a duty imposed upon him by law (*Cahill Bros., Inc.* v. *Clementina Co.,* 208 Cal.App.2d 367 [25 Cal.Rptr. 301]). ■ As Mr. Witkin puts it, the right of indemnity "enures to a person who, without fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." (Witkin, Summary of Cal. Law (1969 Supp.) § 22a, pp. 503-505.)

■ We have concluded that the judgment must be reversed. The court's decision that Muriel M. Sammer was entitled to indemnity was predicated primarily on the court's findings that appellants made false and fraudulent representations as to the size of the trailer park sewer lines, that they were

guilty of wilful and intentional misconduct and that appellant's false and fraudulent representations and wilful concealment induced Mrs. Sammer to purchase the property. There is not a scintilla of evidence to prove that appellants made any representations of any kind regarding the size of the sewer lines, that they were guilty of wilful concealment in this respect, or that respondent was misled in any manner whatsoever. On the contrary, Mrs. Sammer testified that neither she nor her husband ever discussed the size of the sewer lines or the water main with appellants before they purchased the trailer park. Significantly, she said that although she may have seen the drawing before the sale, she did not pay any attention to the dimension of the pipes. She also said that before she sold the property to Ralph, Ozzie and Dominik Caloiaro she did not know what size the sewer lines or the water pipes were.

Respondent argues that the court's decision was based on negligence, not fraud, and that the judgment must be upheld for this reason. The court, in its conclusions of law, concluded that appellants made "a negligent misrepresentation to cross-complainant Muriel M. Sammer relating to the pipes in question." The court also concluded that the negligent misrepresentation "did induce cross-complainant to purchase . . . the trailer park. . . ."

There is no merit to respondent's argument. The court's conclusions of law (even if deemed findings of fact) cannot be reconciled with its findings of fraud and wilful concealment. Worse yet, they are not supported by substantial evidence. Appellants made no representation of any kind as to the size of the sewer lines nor was Mrs. Sammer induced to purchase the trailer park by virtue of any such representation; appellants merely left an unsigned and undated drawing at the trailer park which Mrs. Sammer may not even have seen before she purchased the property, and upon which she admittedly did not rely when she told Ralph Caloiaro that the sewer lines were 6 inches and the water main 1 inch. (See *Clar* v. *Board of Trade,* 164 Cal.App.2d 636, 645 [331 P.2d 89], on the necessity of reliance.)

Furthermore, the court's conclusions as to appellants' negligence are clearly beyond the scope of the pleadings. Respondent's sole theory for recovery, as set forth in her cross-complaint, was fraud and wilful concealment, not negligence. Thus, the terse statement contained in the pretrial order making "indemnification" an issue was presumably based on that theory only. In fact, it appears that the negligence theory was not raised until the trial was concluded. We can hardly hold that appellants, who did not participate in the pretrial conference, had notice that respondent was going to rely on negligence, not fraud, to support her claim of indemnity,

and that they had the opportunity to squarely meet this issue in the court below.

■ Lastly, the court did not find that Mrs. Sammer's conduct was merely passive, as respondent suggests. On the contrary, the court found that respondent Sammer, with intent to induce the Caloiaros to purchase the trailer park, fraudulently and falsely represented that the property was serviced by 6-inch sewer lines and a 1-inch water pipe. The court also concluded that "Muriel M. Sammer did make a wilful misrepresentation relating to the pipes involved." Consequently, the court in essence found that Mrs. Sammer actively participated in the fraud, which induced the Caloiaros to purchase the property, and this finding, supported by some evidence at least, alone precludes a judgment in her favor. Ralph Caloiaro testified that both Mr. and Mrs. Sammer definitely stated that the size of the water main was 1 inch; there was evidence that someone other than appellants had made changes in the copy of the drawing which appellants left at the trailer park and that these changes showed, among other things, 1-inch water pipes; Mr. Sammer, in his wife's presence, said that he and the plumber dug in different sections of the trailer park to roto root the sewer lines, and that they were 6-inch lines. As we have stated, the party seeking indemnification must prove that he did not actively nor affirmatively participate, beyond the mere failure to perform a duty imposed upon him by law, in the wrong which caused the injury. (*Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d 367.)

The judgment on the cross-complaint is reversed.

Coakley, J., concurred.